IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JASON W.,[1] | Case No. 6:18-cv-00483-JR |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY ADMINSTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

      Plaintiff Jason W. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits ("DIB"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

In August 2014, plaintiff applied for DIB and Title XVI Social Security Income alleging disability beginning December 31, 2013[2], due to left eye blindness, right eye vision problems, and memory problems. Tr. 155-67, 189. Plaintiff's DIB application was denied at the initial level and upon reconsideration, whereas plaintiff's Title XVI application was granted at the initial level and he was awarded Social Security Income as of the application date. Tr. 13, 86-99. On February 10, 2017, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 28-58. On April 11, 2017, the ALJ issued a decision finding plaintiff not disabled on or before the date last insured ("DLI") and therefore not entitled to DIB. Tr. 13-22. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 15. At step two, the ALJ determined "blindness in [plaintiff's] left eye" was medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that, through the DLI, plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels but with the following non-exertional limitations:

> He was limited to no exposure to hazards such as unprotected heights and moving mechanical parts but was able to avoid ordinary hazards in the workplace, such as boxes on the floor while walking, detecting approaching persons or objects,

---

[2] Plaintiff initially alleged disability as of March 31, 2008. Tr. 155. However, he amended his onset date at the hearing to December 31, 2013, to coincide with the date last insured. Tr. 37, 39.

walking up and down stairs, and doors ajar. He was limited to occupations that allowed for monocular vision.

Id.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 20. At step five, the ALJ concluded that, through the DLI, plaintiff was capable of performing other work existing in significant numbers in the national economy despite his impairments, such as garment bagger, basket filler, and protective clothing issuer/stocking clerk. Tr. 22.

## DISCUSSION

This case hinges on whether there is sufficient evidence in the record to establish disability as of December 31, 2013, the DLI. Specifically, plaintiff argues that the ALJ erred by: (1) failing to incorporate pre-DLI limitations assessed by Thomas Davenport, M.D., into the RFC; (2) discrediting his hearing testimony regarding the extent of his symptoms during 2013; (3) rejecting the lay statements of his mother, Patricia W.; and (4) neglecting to develop the record pursuant to SSR 83-20.

**I.      Medical Opinion Evidence**

Plaintiff contends the ALJ improperly discounted Dr. Davenport's findings. Pl.'s Opening Br. 4-6 (doc. 10). At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted).

In November 2014, Dr. Davenport, a state agency consulting source, reviewed the record and provided a physical RFC. Tr. 65-67. Dr. Davenport found plaintiff "was already totally blind in [his left] eye at AOD for title II," meaning that plaintiff's left eye impairment arose on or before

Page 3 – OPINION AND ORDER

the DLI. Tr. 62, 67. In terms of visual restrictions, Dr. Davenport opined plaintiff was "limited" on the left side in the following categories: near and far acuity, depth perception, accommodation, and field of vision. Tr. 66. The narrative supporting description stated: "Vision on the LEFT limited to NEVER due to left eye blindness." Id.  In terms of environmental limitations, Dr. Davenport opined plaintiff should "[a]void even moderate exposure" to hazards; the narrative supporting description explained "d[ue] t[o] L[eft] eye blindness [plaintiff] should avoid heights and situations that require depth perception." Tr. 67.

The ALJ assigned "partial weight" to Dr. Davenport's opinion. Tr. 19. The ALJ first noted Dr. Davenport was "an expert in disability evaluation" and his "assessment is consistent with the record as a whole." Id. Yet the ALJ did not wholly accept Dr. Davenport's opinion "because avoiding 'moderate exposure to hazards' is not a feasible limitation." Id. Nevertheless, the ALJ "interpreted" Dr. Davenport's report as being compatible with the RFC's non-exertional limitations – i.e., "no exposure to hazards such as unprotected heights and moving mechanical parts but was able to avoid ordinary hazards in the workplace, such as boxes on the floor while walking, detecting approaching persons or objects, walking up and down stairs, and doors ajar" and "occupations that allowed for monocular vision."[3] Id.

Initially, as plaintiff observes, "ALJs routinely use the expression 'Avoid even moderate exposure to hazards' as an environmental limitation in their [RFC] assessment, and the Commissioner identifies no case law to suggest that Dr. Davenport's findings, routine among ALJ

---

[3] Because the record does not contain records from John Karth, M.D. (the only doctor who treated plaintiff's vision problems prior to the DLI) and plaintiff was unable to afford appropriate follow-up treatment until after the DLI, Dr. Davenport is the only medical source to opine as to functional limitations. Tr. 321, 325, 404. Mary Ann Westfall, M.D., the state agency consulting source who reviewed the record after Dr. Davenport, found "insufficient evidence to evaluate the claim." Tr. 75-76. The ALJ rejected Dr. Westfall's opinion because the record "does support an impairment of blindness in the left eye as of the [DLI]." Tr. 19.

Page 4 – OPINION AND ORDER

RFCs, is not a meaningful limitation." Pl.'s Reply Br. 2 (doc. 14). Indeed, the precise language employed by Dr. Davenport – i.e., "avoid even moderate exposure to hazards" – has appeared in numerous ALJ decisions, demonstrating that it is, in fact, an appropriate concrete work-related limitation of function. See, e.g., Kreg B. v. Comm'r of Soc. Sec., 2018 WL 4621923, *1 (D. Or. Sept. 10), adopted by 2018 WL 4623158 (D. Or. Sept. 25, 2018); Rhinehart v. Colvin, 2016 WL 7235680, *3 (D. Or. Dec. 12, 2016); Jackson v. Comm'r Soc. Sec. Admin., 2016 WL 1670963, *2 (D. Or. Apr. 26, 2016); Johnson v. Colvin, 2015 WL 71851, *2 (D. Or. Jan. 5, 2015). As such, the ALJ erred by dismissing this restriction as "not feasible." Tr. 19. In any event, the ALJ's RFC is not consistent with Dr. Davenport's findings. See Thomas v. Comm'r of Soc. Sec. Admin., 2015 WL 4603872, *9 (D. Or. July 30, 2015) (ALJ erred where the hypothetical posed to the vocational expert included a limitation to "avoid even moderate exposure to hazards," but the ALJ's decision materially "altered the limitation to read: 'avoid . . . even moderate exposure to hazards such as machinery and heights'").

Furthermore, outside of the limitation to "avoid even moderate exposure" to hazards, the ALJ did not specify which findings of Dr. Davenport's were being credited. Tr. 19. Regardless, based on the RFC formulation, it can be inferred that the ALJ rejected, without comment, the portions of Dr. Davenport's report pertaining to plaintiff's inability to perform occupations requiring depth perception. Tr. 65-67. Accordingly, the ALJ erred in weighing Dr. Davenport's report. See SSR 96-8p, available at 1996 WL 374184 ("[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"); see also Craig v. Astrue, 269 Fed.Appx. 710, 712 (9th Cir. 2008) (reversing the ALJ's decision where "the ALJ offered no reason why [an examining doctor's] opinion was persuasive in one

regard, but not the other") (citations omitted). The ALJ's evaluation of Dr. Davenport's opinion is reversed.

## II. Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting his testimony concerning his 2013 functioning. Pl.'s Opening Br. 11-14 (doc. 10). When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead should assess whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that, by June 2013, he had completely lost sight in his left eye. Tr. 42-43. Although plaintiff continued to look for work until March 2013, his vision on his

left side, and subsequently his right side, had been worsening for years. Tr. 44-45, 52. Plaintiff reported he was "having a hard time remembering" when "things got so bad that [he] couldn't read with [his] right eye" – but it was "probably" six months, and possibly twelve months, prior to May 2014 (when he had brain surgery). Tr. 45-48. Plaintiff explained further that he "had no peripheral vision [in his right eye as of the DLI and] things were much darker even in bright light." Tr. 47-48. By early 2013, plaintiff could no longer cook for himself and did not leave the house without his parents, even though, at that point, he could still read and watch television if he was close enough to the text or image, respectively. Tr. 49-50. He managed to independently get around the house because he "grew up [there are had] memorized the floor plan." Tr. 50.

When asked by the ALJ why he did not get imaging studies done until April 2014 (after collapsing at the store), plaintiff responded: "I was unemployed, no medical insurance, no money, and the last time I had heard anything at that point MRIs cost several thousand dollars." Tr. 51. Plaintiff testified he eventually got on the Oregon Health Plan and obtained an MRI (which revealed a large pituitary tumor that was the cause if his symptoms, including his progressively worsening vision). Tr. 47-48, 51.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairment could reasonably be expected to produce some degree of symptoms as of the DLI, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 17. The ALJ first observed plaintiff "has a history of vision loss in the left eye as of about 2011." Tr. 18. While plaintiff "did not have medical treatment for left eye problems" before the DLI, the ALJ nonetheless found "the record supports the existence of a medically determinable impairment of left eye blindness as of the [DLI]." Id.

The ALJ then discussed plaintiff's non-medically determinable right eye impairment. Tr. 18-19. The ALJ noted plaintiff did not seek treatment for right eye issues until April 2014 (i.e., three months after the DLI), despite reporting bilateral vision problems much earlier and obtaining a "a recommendation to pursue appropriate diagnostic studies in 2010." Tr. 18. The ALJ also noted plaintiff "did not attempt to seek treatment for his right eye through the emergency room" even though he "did seek emergency treatment for kidney stones in June 2013." Id. Based on "the paucity, if any, [of] evidence regarding the right eye before" the DLI, the ALJ rejected unspecified facets of plaintiff's testimony.[4] Tr. 18-19.

The ALJ's analysis is flawed in two respects. First, plaintiff did not generally differentiate between his left and right eyes. In other words, plaintiff's testimony regarding functional limitations during the relevant time period – i.e., an inability to cook and navigate unfamiliar physical spaces, and a limited ability to read and watch television – appeared to be based predominantly on left eye blindness, as he acknowledged still having vision in his right eye as of the DLI. Tr. 42-52. The ALJ, however, did not explicitly address these functional limitations or otherwise provide a reason to exclude them from the RFC. Tr. 16-19.

Second, even assuming the reasons cited by the ALJ in regard to plaintiff's right eye are applicable to his overall testimony, they are erroneous given the facts of this case. Id. Namely, an

---

[4] For the purposes of his appeal, plaintiff focuses on the ALJ's errors in relation to his left eye. See generally Pl.'s Opening Br. (doc. 10); Pl.'s Reply Br. (doc. 14). In other words, plaintiff does not challenge the ALJ's step two finding – i.e., that his right eye impairment was not medically determinable on or before the DLI. The Court nonetheless denotes plaintiff's right eye condition was diagnosed shortly after the DLI, the ALJ acknowledged plaintiff's reports of bilateral eye problems as far back as 2010, and the Commissioner ultimately awarded Title XVI benefits based on vision loss in both eyes. Tr. 15-19, 30, 36, 320. Given that the record evinces plaintiff's vision problems were both caused by his brain tumor and progressive, it is unclear how the ALJ determined plaintiff's left eye condition was medically determinable and severe as of the DLI but not his right eye condition. See, e.g., Tr. 306-07, 320-21, 325, 361, 363, 386, 392, 397, 402, 404, 423.

Page 8 – OPINION AND ORDER

adverse credibility finding is improper where, as here, the claimant has a good reason for failing to obtain treatment. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); SSR 16-3p, available at 2016 WL 1119029; see also Tr. 50-51, 275, 325, 404 (evidence reflecting a lack of resources prevented plaintiff from seeking follow-up care for his vision loss). Likewise, a "lack of emergency room treatment or hospitalization is not a specific and legitimate reason to discredit [the claimant's] testimony." Didomenico v. Colvin, 2016 WL 7030437, *6 (D. Or. Nov. 30, 2016) (citation and internal quotations omitted); see also Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010) ("[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist").

Finally, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony. See Brown v. Colvin, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record) (citations omitted); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted) ("whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence").

In sum, the ALJ committed harmful legal error by failing to provide clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements concerning the extent of his limitations as of the DLI. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ's evaluation of plaintiff's testimony is reversed.

### III. Lay Testimony

Plaintiff argues the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, to reject the lay statements of Patricia W. Pl.'s Opening Br. 6-11 (doc. 10). Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted). The ALJ must provide a germane reason to reject such testimony. Id. (citation and internal quotation omitted).

In February 2017, Patricia W. authored a letter in support of plaintiff's application for DIB benefits. Tr. 274-26. Patricia W. specified that, in March 2013, she "started to see changes in [plaintiff's] life . . . Mostly with his eyesight." Tr. 274. At that time, Patricia W. observed plaintiff sitting at his computer or in front of the television with "his face up [close] to the screen." Id. Around July 2013, she "noted [plaintiff] putting his arms out against the walls of the house (hallway) to protect himself from falling, or running into the walls." Id. Patricia W. concluded that plaintiff's "medical condition kept going downhill till he collapsed at Costco [in March] 2014." Tr. 275.

The ALJ addressed Patricia W.'s lay statements in conjunction with the other third-party statements. Tr. 19-20. The ALJ afforded the lay statements only "[s]ome weight" because "they are generally vague and do not provide specific descriptions of functioning," and "not fully consistent with the evidence in the record." Tr. 20. The ALJ then observed Patricia W.'s "statements are the most specific in terms of describing [plaintiff's] problems around the [DLI but they] do not correspond to the medical evidence of record regarding the onset of the level of severity of the impairment in [plaintiff's] right eye." Id. Also, the ALJ interpreted Patricia W.'s testimony as "indicat[ing] that [plaintiff] was, in 2013, still able to use a computer, watch TV, and

avoid ordinary hazards around the house." Id. The ALJ additionally found that, to the extent Patricia W.'s "statements suggest [plaintiff] had problems with his right eye as of December 2013, they are given little weight because the medical evidence, for the reasons discussed above, does not support a medically determinable impairment of the right eye prior to the [DLI]." Id.

Although the ALJ articulated legally sufficient reasons for rejecting Patricia W.'s lay statements, those reasons are not supported by substantial evidence. Notably, as addressed herein, the ALJ determined there was no pre-DLI medical evidence regarding either plaintiff's right or left eye. It would therefore be impossible for Patricia W.'s testimony to coincide with the medical evidence since no such evidence exists. In fact, the lack of medical evidence concerning onset is precisely why Patricia W.'s testimony is so important in the present case:

> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

SSR 83-20, available at 1983 WL 31249.

Moreover, Patricia W. did not delineate between plaintiff's left and right eyes. Thus, similar to plaintiff's testimony, it was error for the ALJ to dismiss Patricia W.'s attested-to limitations as being solely attributable to plaintiff's non-medically determinable right eye impairment. This is especially true given that Patricia W.'s testimony is consistent with both plaintiff's subjective symptom statements and Dr. Davenport's opinion (i.e., the only opinion evidence of record pertaining to 2013). Compare Tr. 274-75, with Tr. 42-52, 65-67. Further, contrary to the ALJ's assertion, Patricia W. did not intimate plaintiff could avoid ordinary hazards; rather, her testimony evinces the opposite – i.e., by July 2013, plaintiff's sight had deteriorated to the point where he had to use touch to navigate (and keep from falling) in his home. Tr. 274.

Page 11 – OPINION AND ORDER

Plaintiff's ability to view text or images in close proximity to a screen does not, as the ALJ determined, reasonably demonstrate a general aptitude for using a computer or watching television. The ALJ's assessment of Patricia W.'s lay statements is reversed.

IV. **Failure to Develop the Record**

Plaintiff contends the ALJ neglected to develop the record by consulting a medical expert in accordance with SSR 83-20. Pl.'s Opening Br. 16-19 (doc. 10). The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). In particular, "where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date" pursuant to SSR 83-20. Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998).

The record reveals plaintiff's symptoms increased in severity prior to the DLI. For instance, plaintiff reported to numerous medical providers his vision symptoms emerged in 2010 and progressively worsened. Tr. 289, 306-07, 320-21, 325, 342, 361, 363, 386, 404, 408. Both plaintiff and his mother similarly testified that, throughout 2013, plaintiff's vision deteriorated. Tr. 42-52, 274-75. By the latter half of 2013, and certainly as of the DLI, plaintiff was unable to cook, leave the house independently, or locate walls or doors in familiar places based on sight alone. Id.

At the hearing, the ALJ acknowledged plaintiff's symptoms were progressive to the point that his "eyesight in both eyes [was so bad the Commissioner] found [he was] entitled to benefits." Tr. 30, 36, 42-43, 45. In addition, in his written decision, the ALJ expressly recognized that, upon

reconsideration, the state agency consulting source found the record to be "insufficient" regarding plaintiff's functioning prior to the DLI. Tr. 19.

Under these circumstances, the ALJ committed harmful legal error by failing to follow SSR 83-20. See Diedrich v. Berryhill, 874 F.3d 634, 638 (9th Cir. 2017) (ALJ's assessment of the disability onset date would have been "mere speculation without the aid of a medical expert" where there were large gaps in the medical record, which documented slowly progressing illness, and "the alleged onset and the date last worked are far in the past"); see also Wellington v. Berryhill, 878 F.3d 867, 873-74 (9th Cir. 2017) (the requirement to consult a medical expert pursuant to SSR 83-20 "most readily applies when an incomplete record clearly could support an inference that a claimant's disability began when there were no contemporaneous medical records"). Therefore, further proceedings are necessary to resolve this case.[5] See Lee v. Colvin, 2016 WL 3647974, *4-5 (D. Or. July 7, 2016); (remanding the ALJ's decision for further proceedings under analogous circumstances); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (articulating the standard for determining the remedy where the ALJ committed harmful legal error). Upon remand, the ALJ must consult a medical expert to determine the precise onset date of plaintiff's

---

[5] While plaintiff asserts the ALJ erred by failing to consult a medical expert regarding the disability onset date as required by SSR 83-20, he also maintains remand for the immediate payment of DIB benefits is warranted. Pl.'s Opening Br. 16-20 (doc. 10). SSR 83-20 makes clear that the disability "onset date must have . . . a legitimate medical basis." 1983 WL 31249. As discussed throughout, there is no medical evidence concerning plaintiff's functioning prior to the DLI because he could not afford appropriate treatment during that time. Although Dr. Davenport indicated certain restrictions were necessary in light of plaintiff's left eye blindness, he did not opine that plaintiff was disabled as of the DLI. Tr. 62, 65-67. Contrary to plaintiff's assertion, the vocational expert's testimony that a need to avoid all hazards would preclude employment is not dispositive given that such a restriction is not articulated in the medical record. Tr. 57. As a result, a remand for further proceedings to consult with a medical expert is the proper remedy. See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[w]hen an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citation and internal quotations omitted).

disability and, if necessary, reformulate plaintiff's RFC and obtain additional vocational expert testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of December 2018.

                                 /s/ Jolie A. Russo
                                  Jolie A. Russo
                         United States Magistrate Judge